UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CRAIG ANTHONY ZAIDEL,

                    Plaintiff,

        -vs-                          **No. 1:13-CV-00507(MAT)**
                                      **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                    Defendant.

---

## I.   Introduction

Represented by counsel, Craig Anthony Zaidel ("plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB")[1] and supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).

## II.  Procedural History

The record reveals that in January 2010, Plaintiff protectively filed applications for DIB and SSI, and alleged an amended disability onset date of December 16, 2009. After these applications were denied, plaintiff requested a hearing, which was held before administrative law judge TImothy M. McGuan ("the ALJ")

---

[1] The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2007. T. 19. However, because plaintiff amended his alleged disability onset date to December 16, 2009, the ALJ found that he did not meet the insured status requirements on his amended onset date and dismissed plaintiff's Title II claim for DIB. T. 19. Plaintiff has not challenged this decision; therefore, the only remaining claim is for SSI.

on August 31, 2011. The ALJ issued an unfavorable decision on March 15, 2012. The Appeals Council denied review of that decision. This timely action followed. Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

**III. Summary of the Medical Evidence**

A review of the medical evidence reveals that plaintiff was diagnosed with chronic pancreatitis, chronic pseudocyst of the pancreatic tail, splenomegaly, splenic vein thrombosis, post-traumatic stress disorder ("PTSD"), anxiety, depression, and alcohol and cannabis dependence.

At a comprehensive chiropractic exam completed on December 2, 2009, plaintiff reported back pain for the past 15 years that "sharpens with movement"; upon examination, plaintiff reported some pain, but gait was normal, he was able to perform a heel-toe walk, and no deficit in the lower extremity was noted. T. 200. Records of spinal MRIs reflect scoliosis and degenerative disc disease at the L4-L5 level but otherwise unremarkable studies. T. 234, 502, 504.

On December 27, 2009, plaintiff went to the ER at Millard Fillmore Suburban Hospital ("MFSH"), reporting that he had blacked out in an IMAX movie theater. T. 215. Physical examination was essentially normal. T. 215-16. It was noted that his report was consistent with "what sounds like a seizure." T. 216. The results of blood work and a CT scan were normal. T. 217-22. On January 6,

2010, plaintiff presented at the Erie County Medical Center ("ECMC") ER, requesting prescription medications including Xanax, complaining of "anxiety and insomnia." T. 226. Physical examination was normal. Id. Plaintiff again went to the MFSH ER on January 28, 2010, complaining of panic attacks and requesting refills on Xanax and Ambien, which were prescribed. T. 213. Again, physical examination was normal. Id. On February 4, 2010, plaintiff visited the ECMC ER, requesting prescriptions for Xanax, Ambien, and Remeron (an antidepressant); however, he "did not wait to be seen," and left the ER. T. 224. The record also reflects that in December and June of 2010, plaintiff presented at Kenmore Mercy Hospital, complaining of pain, and received infusions of Dilaudid (a narcotic analgesic). T. 429-31, 446-47, 455-56. He also received prescriptions for pain medication. T. 455-56.

Plaintiff was evaluated at Monsignor Carr Institute in October 2010. T. 324-28. Plaintiff reported that he had been referred by a mental health counselor "for a possible problem with primarily alcohol." T. 324. According to the evaluating psychologist, plaintiff "appeared to think he was just going to be evaluated so he could be prescribed medication and not be admitted for treatment." T. 327. Plaintiff was noted as having an anxious mood and persecutory delusions, but otherwise normal. T. 324-25. Initially plaintiff "refused to even try to attend groups," but when he was told he would be prescribed medication, he agreed to

attend treatment. T. 320. Plaintiff subsequently treated at Monsignor Carr through August 2011. During that time period, plaintiff continued to report symptoms of anxiety and depression, and was prescribed Xanax and Ambien. T. 304-23. In individual and group therapy, plaintiff reported that his social life consisted of spending time with friends who smoked marijuana and drank alcohol, T. 399, reported that he "[went] to bars to hear music and watch sports," T. 416, and recounted visiting a cook-out where he "played games with the children and had fun without drinking." T. 418. According to plaintiff's therapist, he was "learning to be the life of the party without the alcohol. Id. He also reported that he had "decreased anxiety and no panic attacks since taking medication," T. 400, that his anxiety medication was working, T. 419-20, and that his pancreatitis was "under control" when he was not drinking. T. 402. Plaintiff applied to the University of Buffalo, was accepted, and planned to begin classes as of August 2011. T. 413, 423. In August, he reported "increased anxiety due to a lot of parties, company and school." T. 423.

A CT scan of the abdomen performed in December 2010 was consistent with a diagnosis of splenic vein thrombosis and the possibility of a pancreatic cystic lesion. T. 299. Plaintiff was referred to Dr. Merril Dayton, who opined that "a splenectomy [was] not indicated due to the patient's lack of symptoms, as well as no evidence of hypersplenism or bleeding varices." T. 385. In February

2011, plaintiff underwent repair of an umbilical hernia without complications. T. 375, 388-89. Dr. Dayton followed up with plaintiff in March 2011, noting no abnormalities. 371-72. An MRI that same month showed "[n]o significant visible change overall." T. 370. In April 2011, Dr. Dayton once again noted that a splenectomy was "not warranted since patient [was] asymptomatic." T. 368. A June 2011 MRI of the abdomen showed no change. T. 356, 362. In July 2011, Dr. Dayton noted that plaintiff reported abstinence from alcohol, and that is last attack of pancreatitis had been in December 2010; plaintiff complained of fatigue but reported that he "remain[ed] pain free." T. 359. An MRI taken that day "show[ed] [an] essentially unchanged pseudocyst." Id.

Dr. Nikita Dave completed a consulting internal medicine examination in March 2010. T. 228-34. Plaintiff reported pancreatitis secondary to alcohol abuse, and stated he did not recall when he had his last "bout of severe pancreatitis." T. 228. He reported that he had suffered from alcoholism since 2005, and that he had stopped "heavy drinking" in 2007, "but he does occasionally binge or have a drink." Id. Plaintiff reported "constant" back pain that he rated 4/10. Id. He stated that he felt "very anxious in social situations," that he "prefer[red] a quiet environment and remains to himself," and found it "difficult to concentrate in crowds and noisy environments." Id. Plaintiff was currently prescribed Xanax, Ambien, and Remeron, and he reported

that he "believe[d] that the Remeron and Xanax . . . helped curb the alcoholism." T. 229-30. In terms of activities of daily living ("ADLs"), plaintiff reported that he cooked, showered, and dressed himself; cleaned, did laundry, and shopped once a week; and watched television, played guitar, and surfed the internet. Id. Physical examination was normal. T. 230-31. Dr. Dave opined that plaintiff "may have mild to moderate limitations in lifting, carrying, pushing, and pulling of heavy objects primarily due to his epigastric pain at this time and his lumbar spine pain." T. 232. Dr. Dave reviewed a lumbosacral spine X-ray dated March 22, 2010, which showed a transitional L5 vertebral body but was essentially unremarkable. T. 234.

Dr. Shepard Goldberg, Ph.D., completed a consulting psychiatric evaluation in March 2010. T. 235-39. Plaintiff reported that he had completed four years of college and last worked in October 2009, teaching English in Taiwan. T. 235. Plaintiff stated that he held this job for two and a half years, and left after having a "nervous breakdown" incident to "a couple of traffic accidents in a scooter in which he obtained concussions and with more seriously [sic] injuries, although he did not provide the details." Id. Plaintiff reported symptoms of anxiety and agoraphobia, and stated he was "having panic attacks all the time." T. 236. Plaintiff reported "no current use of alcohol or drugs." Id. He had a prior DWI charge in 2009, after which his license was

suspended for six months. Id. Plaintiff's mental status examination was normal: thought processes were coherent and goal-directed; affect was appropriate; mood was neutral; sensorium was clear; orientation was appropriate; attention and concentration were intact, he could count, and he could do simple calculations and perform serial 3s; memory was intact; cognitive functioning was "[a]bove average"; and insight and judgment were good. T. 237.

Dr. Goldberg opined that plaintiff "certainly possess[ed] the intellectual ability to perform almost all tasks related to any adequate functioning the vocational capacity." T. 238. According to Dr. Goldberg, "[plaintiff] question[ed] the effectiveness of the medication in controlling his anxiety, but when he does not take his medication, the anxiety builds to the point where he is almost unable to function." Id. Dr. Goldberg concluded that plaintiff was "therefore moderately limited in his ability to work in any effective manner." Id. Dr. Goldberg stated that if plaintiff were able to find "effective medication for anxiety control," he would be able to work without limitation; however, "[a]s long as the anxiety manifests itself, then his ability to function [was] seriously impaired to the more simple tasks that require little imagination, creativity, or the level of intelligence the claimant currently possesses." Id. Dr. Goldberg diagnosed plaintiff, on Axis I, with adjustment disorder with mixed anxiety and depressed

feeling, and noted a fair prognosis. T. 239. He recommended that plaintiff "engage in some kind of psychological therapy." Id.

Dr. Hillary Tzetzo completed a psychiatric review technique form in April 2010, in which she found that in the categories of affective and anxiety-related disorders, plaintiff suffered from a medically determinable impairment that did not precisely meet the diagnostic criteria of any listed impairment. T. 249, 251. She found that plaintiff had mild restrictions of ADLs; mild difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence, or pace; and no repeated episodes of deterioration. T. 256. She found no evidence of "C" criteria. T. 257. Dr. Tzetzo opined that plaintiff should be able to function fully in a work setting, with "low public contact." T. 258.

Dr. Tzetzo also completed a mental residual functional capacity ("RFC") assessment, in which she found that plaintiff had moderate limitations in the ability to: maintain attention and concentration for extended periods; complete a normal workday or week without interruptions from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to change in the work setting;

and set realistic goals or make plans independently of others. T. 275-76. Otherwise, Dr. Tzetzo found that plaintiff had no significant limitations. Id.

Dr. Dayton completed a "Chronic Pancreatitis Medical Assessment Form" in July 2011. T. 352. Dr. Dayton opined that plaintiff would experience frequent interference with attention and concentration throughout the workday, and that as a result of his "workplace stress," plaintiff would have difficulty with routine, repetitive tasks at consistent pace, detailed or complicated tasks, strict deadlines, fast-paced tasks, and exposure to work hazards. T. 353. According to Dr. Dayton, plaintiff could walk one and a half city blocks without rest; sit for 30 minutes at a time with a total of two hours sitting in an eight-hour workday; and stand for 20 minutes at a time with a total of less than two hours standing/walking in an eight-hour workday. T. 353-54. Dr. Dayton opined that plaintiff could frequently lift less than 10 pounds, occasionally lift 10 pounds, and rarely lift 20 or 50 pounds. T. 354.

## IV.  Scope of Review

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Social Security Act ("the Act"), the district court is limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the Commissioner employed the proper legal

standards. Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir.
2003). The district court must accept the Commissioner's findings
of fact, provided that such findings are supported by "substantial
evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's
findings "as to any fact, if supported by substantial evidence,
shall be conclusive"). The reviewing court must scrutinize the
whole record and examine evidence that supports or detracts from
both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998)
(citation omitted). "The deferential standard of review for
substantial evidence does not apply to the Commissioner's
conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir.
2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir.
1984)).

**V.    The ALJ's Decision**

The ALJ followed the well-established five-step sequential
evaluation promulgated by the Commissioner for adjudicating
disability claims. See 20 C.F.R. § 416.920. At step one, the ALJ
determined that Plaintiff had not engaged in substantial gainful
activity since December 16, 2009, the amended alleged onset date.
T. 19. At step two, the ALJ found that plaintiff had the following
severe impairments: abuses and dependences of alcohol, cannabis,
and nicotine; chronic pancreatitis; chronic pseudocyst of the
pancreatic tail; splenomegaly; splenic vein thrombosis; post-

traumatic stress disorder ("PTSD"); anxiety; and depression. T. 19-20.

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. T. 20-21. The ALJ also found that plaintiff's mental impairments, considered singly or in combination, did not meet or medically equal the criteria any listed impairment. T. 20. The AlJ concluded that plaintiff had mild restrictions in ADLs, noting that plaintiff was independent with personal care, cooked, clean, and did laundry and chores. Id. The ALJ found moderate difficulties in social functioning, noting that although plaintiff related anxiety and panic attacks, he also reported much socialization. T. 20-21. The ALJ found no further limitations in mental functioning, thus concluding that the "B" criteria of the listings were not satisfied. T.21. The ALJ noted that there was no evidence of "C" criteria. Id.

At step four, the ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform less than the full range of medium work as defined in 20 C.F.R. § 416.929 in that he could have occasional contact with the public but had no limitations in the ability to interact with coworkers and supervisor. Id. The ALJ also found that plaintiff should not operate motor vehicles as part of his job duties. Id. The ALJ reviewed the medical evidence, including treatment records and the consulting examinations of Drs. Dave and Goldberg. T. 21-25. The

ALJ specifically noted that he assigned "little weight" to Dr. Dayton's medical source opinion, finding that it was "not supported by the medical record or by the claimant's admitted activities." T. 25. The ALJ stated that there was "some indication of fatigue and low energy, but not to the degree that would prevent [plaintiff] from performing medium work." Id.

At step five, the ALJ determined that, considering plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that plaintiff could perform. T. 25. Accordingly, the ALJ found that plaintiff was not disabled.

## VI. Discussion

### A. Application of the Treating Physician Rule

Plaintiff contends that the ALJ erred in not giving controlling weight to the functional assessment of plaintiff's treating physician, Dr. Dayton. The treating physician rule provides that an ALJ must give controlling weight to a treating physician's opinion if that opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with other substantial evidence in the record. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2). The Court agrees with the ALJ, however, that Dr. Dayton's assessment of plaintiff's limitations was not supported by substantial record evidence. Although Dr. Dayton

opined that plaintiff had significant mental and physical limitations, Dr. Dayton's treatment notes do not support these limitations, nor does other substantial record evidence. As recounted above, in treatment with Dr. Dayton, plaintiff repeatedly presented as asymptomatic for pancreatitis, and imaging tests consistently revealed no changes. Moreover, although plaintiff complained of fatigue, he reported that he remained pain-free and did not have attacks of pancreatitis as long as he abstained from alcohol use. Treatment notes from other sources document similar findings. Additionally, in treatment at Monsignor Carr, plaintiff reported that he engaged in a variety of social activities, including going out with friends to bars and concerts. He also reported that his anxiety medication was working and that his pancreatitis was under control. Moreover, as the ALJ noted, plaintiff applied to and was accepted at University of Buffalo for social work classes. The treatment records, including those from Dr. Dayton, simply do not support the limitations outlined in Dr. Dayton's opinion.

Plaintiff contends that the ALJ erred in failing to specifically state the weight given to the consulting opinions, and in failing to explicitly discuss the factors laid out in 20 C.F.R. § 404.1527(d)(2)-(d)(6) when rejecting Dr. Dayton's opinion. The ALJ need not explicitly discuss each of the factors, but he must apply "the substance of the treating physician rule." Halloran, 362

F.3d 28, 32 (2d Cir. 2004); see <u>Atwater v. Astrue</u>, 2013 WL 628072, *2 (2d Cir. 2013) ("[S]lavish recitation of each and every factor [is not required] where the ALJ's reasoning and adherence to the regulation are clear."). In this case, the ALJ fully reviewed the record evidence (including Dr. Dayton's own treatment notes which did not substantially support the opinion) and evaluated Dr. Dayton's opinion in light of its consistency with the rest of the record evidence. Moreover, the ALJ did state the weight given to Dr. Dayton's opinion, as it was the opinion of the treating physician. See <u>Schisler v. Sullivan</u>, 3 F.3d 563, 567 (2d Cir. 1993) (ALJ required to articulate weight given to treating doctors' conclusions). It is clear from the ALJ's decision that he followed the substance of the treating physician rule, and his decision, which does not accord controlling weight to Dr. Dayton's opinion, will not be disturbed.

### B.   Mental Residual Functional Capacity Assessment

Plaintiff argues that the ALJ improperly assessed his mental residual functional capacity, contending that because the ALJ did not articulate the weight given to the consulting physicians' opinions, and again because the ALJ failed to give controlling weight to Dr. Dayton's opinion, the mental RFC was not supported by substantial evidence.

The ALJ specifically discussed Dr. Dave's and Dr. Goldberg's opinions, although he did not explicitly assign them any particular

14

weight. T. 22-24. Plaintiff argues that the ALJ was required to explain the weight he gave to *all* of the medical opinions of record, citing McMullen v. Astrue, 2008 WL 3884359 (N.D.N.Y. Aug. 18, 2008). However, McMullen merely points out that an ALJ is generally required to describe the particular weight given to a *treating* physician's opinion. Id. at *4 ("The Regulations require the Commissioner's notice of determination or decision to 'give good reasons' for the weight given a treating source's opinion.")(citing 20 C.F.R. 404.1527(d)(2)).

Plaintiff also argues that the ALJ "mischaracterized" Dr. Goldberg's opinion, which stated that, if not medicated, plaintiff would be "seriously impaired to the more simple tasks that require little imagination, creativity, or the level of intelligence the claimant currently possesses." However, Dr. Goldberg *also* stated that plaintiff was only "moderately limited in his ability to work in any effective manner." Moreover, plaintiff's own treatment records indicate that he was on medication for anxiety, and that it was working. Dr. Goldberg specifically opined that, with effective medication, plaintiff was virtually unlimited in his ability to work. Dr. Tzetzo also opined that plaintiff was able to do work as long as he was limited to "low public contact." Thus, substantial record evidence supports the ALJ's conclusion that plaintiff's mental limitations included limitations only in interacting with the public.

## VI.  Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 10) is granted, and plaintiff's cross-motion (Doc. 11) is denied. The ALJ's finding that plaintiff was not disabled is supported by substantial evidence in the record, and accordingly, the Complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:      August 7, 2015
            Rochester, New York.